IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PHYLLIS MARIE KNIGHT, | ) | 8:19CV206 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| JOHN C. CHATELAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Phyllis Marie Knight ("Knight"), who also refers to herself as Dr. Phyllis Marie Knight-Bey, D.M., filed this case on May 8, 2019, and was granted leave to proceed in forma pauperis on May 9, 2019. The court now conducts an initial review of Knight's Complaint (Filing 1) and Supplement (Filing 7) to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Knight alleges that she "has identified herself as an aboriginal Moorish American National, a citizen of the Moorish National Republic Federal Government, Northwest Africa,[1] and as a participant in the Moorish Divine and National Movement of the World-the North Gate," and that she is "seeking damages due the unlawful eviction filing by (attorney) John C. Chatelain on behalf of his client (defendant) La Chelle Phillips without any proof of a contractual violation ..." (Filing 1, p. 1).

---

[1] "The Moorish Science Temple of America was founded by Timothy Drew, a/k/a Noble Drew Ali, in 1913.... Drew preached that all African-Americans are of Moorish descent and thus are not citizens of the United States. *Great Seal Moorish Sci. Temple of Am., Inc. v. New Jersey*, No. CIV.A. 05-CV-345, 2005 WL 2396311, at *1 (E.D. Pa. Sept. 28, 2005) (citing *United States v. James*, 328 F.3d 953, 954 (7th Cir.2003)). "Drew instructed his followers that all 'Moorish Americans' must carry a 'Moorish passport' bearing one's 'real' name, which was often created fictitiously by adding names that Drew claimed corresponded to the three ancient Moroccan tribes, 'Ali,' 'Bey,' or 'El,' to one's given birth name." *Id.* (citing *United States v. Darden*, 70 F.3d 1507, 1517 (8th Cir. 1995)).

Five Defendants are named in the Complaint: John C. Chatelain ("Chatelain"), La Chelle Phillips ("Phillips"), the Douglas County Court Clerk's Office, Judge Sheryl L. Lohaus, and the City of Omaha (Filing 1, pp. 2-3), but in a Supplement filed on May 20, 2019, Judge Lohaus and the City of Omaha are not included in the list of Defendants (Filing 7, p. 3). However, the caption of both filings lists six Defendants: Chatelain, Phillips, an unidentified County Court Judge, County Court Clerk Supervisor (Etta), the City of Omaha, and the State of Nebraska.

Knight alleges that she "entered [a] motion in the (Douglas County Court) on May 7, 2019 demanding case number CI 19-8911 be dismissed due to lack of jurisdiction over the person, the subject and the matter due to diversity of citizenship." (Filing 1, p. 1) The court takes judicial notice of the proceedings in *La Chelle Phillips v. Phyllis Marie Knight*, County Court of Douglas, Nebraska, Case No. CI 19-8911 (available on the JUSTICE public database at www.nebraska.gov).[2] The county court file reflects that a complaint for restitution and detainer was filed against Knight on April 24, 2019, by attorney John C. Chatelain ("Chatelain") on behalf of La Chelle Phillips ("Phillips"), who was alleged to be the owner of a residence located at 5403 Grand Avenue in Omaha, Nebraska. The matter was dismissed without prejudice following a hearing on May 8, 2019.

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

[2] Federal courts may sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (federal courts may take judicial notice of judicial opinions and public records); *Stahl v. United States Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (taking judicial notice of public records, and considering such materials in a motion to dismiss).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

Federal district courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Original jurisdiction of the federal district courts over civil actions is generally set forth in 28 U.S.C. §§ 1331 and 1332. Subject-matter jurisdiction under 28 U.S.C. § 1331, commonly referred to as "federal question" jurisdiction, is proper when a plaintiff asserts a claim arising under a federal statute, the Constitution, or treaties of the United States. *McLain v. Andersen Corp.*, 567 F.3d 956, 963 (8th Cir. 2009). Subject-matter jurisdiction under 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction, is proper when "the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan v. Schneider Natl. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). The necessary diversity of citizenship can be between citizens of different States" or between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(1)-(2). In addition, the amount in controversy in an action brought under "diversity of citizenship" jurisdiction must be greater than $75,000.00. 28 U.S.C. § 1332(a).

Knight alleges that she "is proceeding as a Natural Person, in Propria Persona, Sui Juris under the status 28 U.S. Code § 1331 and 42 U.S. Code § 242 [*sic*]" (Filing 1, p. 3). The second statutory reference presumably was intended as 18 U.S.C. § 242, which is a "civil rights statute making it criminal to act (1) 'willfully' and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States." *United States v. Peterson*, 887 F.3d 343, 347 (8th Cir. 2018) (quoting *United States v. Lanier*, 520 U.S. 259, 264 (1997)). There is no private cause of action under this statute. *Garrison v. Rock Creek Holding, LLC*, No. 5:19-CV-05021, 2019 WL 1186862, at *2 (W.D. Ark. Mar. 13, 2019) (citing *Rockefeller v. United States Court of Appeals Office, for Tenth Circuit Judges*, 248 F. Supp. 2d 17 (D.D.C. 2003)); *see Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) (18 U.S.C. § 242 is a criminal statute that does not give rise to civil liability). However, the statute has a civil counterpart, 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Knight cites three federal statutes that Defendants allegedly violated. She first cites 28 U.S.C. § 4101, which is the definitions section of the Securing the Protection of our Enduring and Established Constitutional Heritage Act (the "SPEECH Act"). The SPEECH Act makes foreign defamation judgments unenforceable in the United States unless it can be shown that such judgments satisfy the protections of freedom of speech and press guaranteed by both the First Amendment to the United States Constitution and the constitution of the state in which the domestic court is located. *See* 28 U.S.C. § 4102(a)(1); *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 1004 n. 22 (9th Cir. 2013). It has no possible application here, either as the predicate for a § 1983 action or on its own. Next, Knight cites the Hate Crimes Act, 18 U.S.C. § 249, which also bears no relationship to the facts alleged in Knight's Complaint, and which, as a criminal statute, does not create any rights cognizable under § 1983. *See Wolf v. Jefferson Cty., Missouri*, No. 4:15-CV-1174-CEJ, 2016 WL 233247, at *2 (E.D. Mo. Jan. 20, 2016), *aff'd*, No. 16-1442, 2016 WL 10592264 (8th Cir. Oct. 12, 2016). Finally, Knight cites 18 U.S.C. § 872, which makes it illegal for a federal officer or employee to commit or attempt an act of extortion. Again, this criminal statute has nothing to do with this case (because, among other reasons, it only applies to federal officers and employees) and,

in any event, it does not create any private right of action. *See Ramirez v. United States*, No. SACV 14-1299-JLS ANX, 2015 WL 3606218, at *6 (C.D. Cal. Mar. 11, 2015).

Knight asserts that "Intentional Inflection [*sic*] and Emotional Distress is protect[ed] under the First Amendment" (Filing 1, p. 10). While it is true that "[t]he Free Speech Clause of the First Amendment ... can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress," *Snyder v. Phelps*, 562 U.S. 443, 451 (2011), there is no recognized constitutional claim for intentional infliction of emotional distress. *See Moore v. City of Chicago*, No. 05 C 5868, 2008 WL 516338, at *4 (N.D. Ill. Feb. 20, 2008) ("[W]hile damages for emotional distress may be recovered in a § 1983 action, intentional infliction of emotional distress is not itself a cognizable constitutional claim."); *Wiggins v. Steiner*, No. C 96-1982 VRW, 1996 WL 432327, at *1 (N.D. Cal. July 29, 1996) ("[A]lleged infliction of emotional distress may be the basis for a state tort claim, but it is not the basis for a constitutional claim for damages.").[3] Similarly, "[i]t is well established in this circuit that '[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.'" *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir.1993)).

Even if Knight could legitimately claim that she was deprived of some right under a federal statute or constitutional provision, she cannot bring a § 1983 action unless the deprivation was caused by the conduct of a person acting under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. To state a

---

[3] Even liberally construing the Complaint as asserting a First Amendment retaliation claim, no relief may be granted because, among other reasons, it is not alleged that Knight engaged in any protected activity that led to her attempted eviction. A First Amendment retaliation claim must allege: (1) the plaintiff "engaged in a protected activity," (2) "the government official took adverse action" against the plaintiff "that would chill a person of ordinary firmness from continuing in the activity," and (3) "the adverse action was motivated at least in part by the exercise of the protected activity." *In re Kemp*, 894 F.3d 900, 906 (8th Cir. 2018) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)), *cert. denied sub nom. Griffen v. Kemp*, 139 S. Ct. 1176, 203 L. Ed. 2d 199 (2019).

claim against a private actor, a plaintiff must allege facts establishing "not only that a private actor caused a deprivation of constitutional rights, but that the private actor willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." *Crawford v. Van Buren Cty.*, 678 F.3d 666, 670-71 (8th Cir. 2012) (quoting *Dossett v. First State Bank*, 399 F.3d 940, 951 (8th Cir. 2005)).

Phillips and Chatelain, the only Defendants who are alleged to have taken any action in attempting to evict Knight, are private actors, and Knight's allegations fall far short of showing the existence of a conspiracy. She merely alleges that "the Judge and Attorney [were] working together as officers of the court under the employment of the UNITED STATES CORPORATION" (Filing 1, p. 3). A conclusory allegation that the defendants acted in concert fails to allege a sufficient factual basis to establish any sort of "meeting of the minds." *See, e.g., W. Cong. St. Partners, LLC v. Rivertown Dev.*, LLC, 739 F. App'x 778, 784-85 (6th Cir.) (no actionable conspiracy where "officers of the court" allegedly aided in plaintiff's eviction), *cert. denied*, 139 S. Ct. 486, 202 L. Ed. 2d 377 (2018); *McCullough v. Sarpy Cty.*, No. 8:18CV194, 2019 WL 234776, at *3 (D. Neb. Jan. 16, 2019) ("None of Plaintiff's specific factual allegations point to or suggest a 'meeting of the minds' amongst Defendants and/or other parties, as opposed to discrete, individual alleged acts by them not done in concert. Furthermore, general and conclusory allegations of conspiracy among Plaintiff's ex-wife, her family members, and her attorney and law enforcement, prosecutors, and/or judicial officers, are not sufficient allegations of action under color of state law for Plaintiff to proceed under § 1983.").

Knight names the State of Nebraska as a defendant in the caption of her Complaint, but the Eleventh Amendment bars claims for damages by private parties against a state.[4] *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Knight's claim for damages against the Douglas County Court Clerks Office likewise fails. "[C]ourts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the

---

[4]The City of Omaha does not enjoy Eleventh Amendment immunity, but there are no facts alleged in the Complaint or Supplement to show that the City had any involvement in this matter.

eleventh amendment." *Robinson v. Lancaster Cty. Court*, No. 8:18CV111, 2019 WL 1208812, at *3 (D. Neb. Mar. 14, 2019) (quoting *Harris v. Missouri Ct. of App.*, 787 F.2d 427, 429 (8th Cir. 1986)). Individual county court judges and county court clerks are also shielded by Eleventh Amendment immunity when sued in their official capacities. *See Robinson v. Lancaster Cty. Court*, No. 8:18CV111, 2019 WL 1208812, at *3 (D. Neb. Mar. 14, 2019); Neb. Rev. Stat. §§ 24-501 *et seq*. On the facts alleged by Knight, judges and court clerks who are named as Defendants in their individual capacity would also be immune from suit. *See Robinson*, 2019 WL 1208812, at *3 n. 3; *Tyler v. Vicki*, No. 8:16CV189, 2016 WL 3448470, at *2 (D. Neb. June 20, 2016), *aff'd* (8th Cir. 16-3379) (Oct. 7, 2016).

A judge is immune from suit, including suits brought under § 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (internal citations omitted). An act is judicial if "it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Id.* (internal citations omitted). Absolute judicial immunity is not overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

Court clerks are absolutely immune for "discretionary" acts, which are those taken at a judge's direction or pursuant to court rule. *Geitz v. Overall*, 62 Fed. App'x 744, 2003 WL 1860542, at *1 (8th Cir. 2003) (unpublished) (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993)). "Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process, unless the clerks acted in the clear absence of all jurisdiction." *Boyer v. County of Washington*, 971 F.2d 100, 102 (8th Cir. 1992) (internal brackets, quotation, and citation omitted). A clerk's task of issuing a summons is an integral part of the judicial process.

Apart from her reliance on 42 U.S.C. § 1983, Knight attempts to invoke the court's "federal question" jurisdiction on the basis of other legal authorities. As will be discussed below, none have merit.

First, and foremost, Knight cites the "Morocco-American Peace and Friendship Treaty of 1786-1787" (Filing 1, p. 10). "The Treaty with Morocco is one of the Barbary Treaties (executed, during 1795-1836 between the United States and semi-autonomous North African city-states of Algiers, Tunis, and Tripoli, and the Sultanate of Morocco). Over the centuries past, these treaties went through numerous superceding reconfirmations and full or partial terminations." *El Ameen Bey v. Stumpf,* 825 F. Supp. 2d 537, 558 (D.N.J. 2011). The Treaty was "executed in response to the ill of piracy rampant during 15th to 18th centuries in the coastal waters and ports of the [*sic*] North Africa and the high 'protection fees' charged by North African rulers for maintaining peace in their coastal waters and ports." *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp.2d 241, 260 n.16 (D.N.J. 2011) (holding that reliance on the Treaty with Morocco for the purposes of a civil suit raising claims based on the events that occurred within United States' geographical territory is facially frivolous). "[A] litigant's reliance on any Barbary Treaty, including on the Treaty with Morocco, for the purposes of a civil suit raising claims based on the events that occurred within what is the United States' geographical territory is facially frivolous, and that includes any claims related to real estate property located within the United States, collection of mortgage payments, foreclosure or eviction proceedings, etc." *El Ameen Bey* , 825 F. Supp. 2d at 558 (citation omitted); *see also Ali v. Scotia Grp. Mgmt. LLC*, No. CV-18-00124-TUC-JGZ, 2018 WL 3729742, at *4 (D. Ariz. Aug. 6, 2018) (no "federal question" jurisdiction for claim brought by "Moorish American" under Treaty with Morocco); *Wiley v. South Carolina*, No. 6:18-CV-0694-BHH-KFM, 2018 WL 1998994, at *2 (D.S.C. Mar. 26, 2018) (same), *report and recommendation adopted*, No. 6:18-CV-00694-AMQ, 2018 WL 1994250 (D.S.C. Apr. 27, 2018); *El-Bey v. Mount Pleasant*, No. 2:16-CV-3864-RMG-MGB, 2016 WL 8674642, at *6 (D.S.C. Dec. 16, 2016) (same), *report and recommendation adopted*, No. 2:16-CV-3864-RMG, 2017 WL 66324 (D.S.C. Jan. 6, 2017).

Second, Knight cites "Article 6, Clause 2 of the Constitution, referred to as Supreme Clause" (Filing 1, p. 4). The Supremacy Clause provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. The Supremacy Clause does not create an independent private right of action. *Doty v. Berghuis*,

No. 1:08-CV-612, 2008 WL 4756018, at *3 (W.D. Mich. Oct. 23, 2008) (citing cases); *see Bey v. Terminix Int'l, L.P.*, No. 217CV02597SHLCGC, 2018 WL 3552348, at *3 (W.D. Tenn. July 24, 2018), *report and recommendation adopted*, No. 217CV02597SHLCGC, 2018 WL 4407254 (W.D. Tenn. Sept. 17, 2018); *Profit v. City of Shaker Heights*, No. 1:18CV1223, 2019 WL 315092, at *5 (N.D. Ohio Jan. 23, 2019).

Third, Knight cites the "United Nations Universal Declaration of Human Rights" (Filing 1, p. 4). As a matter of law, provisions of the Universal Declaration of Human Rights do not establish any rights or causes of action under section 1983 beyond those recognized under the Constitution." *LaDoucer v. Sherburne Cty. Jail*, No. CIV. 08-4839 JNE/AJB, 2009 WL 5469900, at *4 (D. Minn. Nov. 19, 2009) (citing *Crow v. Gullet*, 706 F.2d 856, 858 (8th Cir. 1983)), *report and recommendation adopted*, No. CV 08-4839 (JNE/AJB), 2010 WL 11602754 (D. Minn. Jan. 14, 2010), *aff'd*, 403 F. App'x 123 (8th Cir. 2010).

Fourth, Knight cites the Civil Rights Act of 1964 (Filing 1, p. 10), which contains provisions barring discrimination in voting rights (Title I), public accommodations (Title II), education (Title IV), use of federal funds (Title VI), and employment (Title VII). While certain private rights of action are authorized by the Act, the facts alleged in Knight's fail to show that she has any actionable claim for unlawful discrimination under the Act.

Fifth, Knight cites "Executive No. 1-308 Performance of the Acceptance under Reservation of Rights" (Filing 1, p. 4), which presumably is a reference to Section 1-308 of the Uniform Commercial Code ("Performance or Acceptance Under Reservation of Rights").[5] This is not a federal statute, and it has no application to the case at hand.

Sixth, and finally, Knight cites "Fraud Rule 8.4 Misconduct." This presumably is a reference to Rule 8.4 of the Nebraska Rules of Professional Conduct. *See* Neb. Ct. R. of Prof. Cond. § 3-508.4. A violation of this rule should not itself give rise to a cause of action

---

[5] "This section provides machinery for the continuation of performance along the lines contemplated by the contract despite a pending dispute, by adopting the mercantile device of going ahead with delivery, acceptance, or payment 'without prejudice,' 'under protest,' 'under reserve,' 'with reservation of all our rights,' and the like." U.C.C. § 1-308, official comment 1.

against a lawyer, *see* Neb. Ct. R. of Prof. Cond. Preamble, Scope, ¶ 20; *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 628 (8th Cir. 2009), and certainly does not give rise to a federal question.

Knight does not purport to invoke the court's "diversity of citizenship" jurisdiction, under 28 U.S.C. § 1332, nor could she legitimately do so based on her alleged status as "a citizen of the Moorish National Republic Federal Government, Northwest Africa." *See Allah El v. Avesta Homes*, LLC, 520 F. App'x 806, 809 (11th Cir. 2013) (rejecting claim that plaintiffs' status as Moorish Nationals renders them diverse from defendants for purposes of jurisdiction); *Bey v. United States Legislature*, No. 17-CV-7569 (CM), 2017 WL 6611052, at *2 (S.D.N.Y. Oct. 25, 2017) (Plaintiff's "purported status as a ... 'Moorish-American' does not create diversity jurisdiction where all parties are domiciled in the same state."); *Jackson-El v. State & Fed. Plaintiffs in Gen.*, No. 11-CV-278, 2011 WL 1584606, at *1 (W.D. Mich. Apr. 26, 2011) (characterizing Moorish-American's claim of non-United States citizenship as "delusional").

Knight is still residing at 5403 Grand Avenue in Omaha, Nebraska, and presumably is a Nebraska citizen, as are most of the Defendants. It appears Phillips may be a citizen of a different state, as it is alleged that she resides in San Antonio, Texas. Out of an abundance of caution, therefore, the court will allow Knight, if she so desires, to file an Amended Complaint to allege a state-law claim over which this court can properly exercise "diversity of citizenship" jurisdiction. For that to happen, however, not only must every Defendant who is named in the Amended Complaint be a citizen of state other than Nebraska (assuming Knight is, in fact, domiciled here), but the amount in controversy must exceed $75,000.00.

Although Knight seeks to recover $100,000.00 in damages for emotional distress (Filing 1, p. 11), the court questions the legitimacy of this claim. No facts are alleged in the Complaint to justify such a large award. It merely appears that Knight was summoned for a hearing in county court, which concluded with the dismissal of the action that was filed against her by Phillips.

A complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the

claim is really for less than the jurisdictional amount. *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (quoting *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, LLC*, 620 F.3d 926, 931 (8th Cir. 2010)). "The legal certainty standard is met where the legal impossibility of recovery [is] so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (alteration in original) (citations and internal quotation marks omitted). "In other words, an amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002).

Where a complaint "alleges a sufficient amount in controversy to establish diversity jurisdiction, but ... the court questions whether the amount alleged is legitimate, the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Knight therefore will be required in the Amended Complaint to allege with particularity any symptoms or physical manifestations of her emotional distress and to attach to the Amended Complaint copies of all supporting evidence, including any pertinent medical records, to establish that the jurisdictional amount is satisfied in this case. Documentation must also be provided for any other types of damages Knight might claim in the Amended Complaint.

The Amended Complaint will supersede, not supplement, all previous pleadings. In other words, the Amended Complaint must stand or fall on its own; the court will not look to the original Complaint or Supplement when reviewing the Amended Complaint.

## IV. CONCLUSION

The court does not have "federal question" subject-matter jurisdiction over any claim alleged in Knight's Complaint and Supplement. On its own motion, however, the court will grant Knight leave to file an Amended Complaint properly invoking the court's "diversity of citizenship" jurisdiction. If an Amended Complaint is filed within 30 days, the court will then conduct another initial review pursuant to 28 U.S.C. § 1915(e)(2). But if an Amended Complaint is not filed within 30 days, this action may be dismissed without further notice.

IT IS THEREFORE ORDERED:

1. On the court's own motion, Plaintiff shall have 30 days in which to file an Amended Complaint that properly invokes the court's "diversity of citizenship" jurisdiction and that states a claim upon which relief may be granted. Failure to file an Amended Complaint within 30 days will result in the court dismissing the case without further notice to Plaintiff.

2. The clerk of the court is directed to set the following pro se case management deadline in each case: July 15, 2019: check for amended complaint.

DATED this 13th day of June, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge